UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELLY ANN DARLING,<br><br>Defendant.<br>_____/ | No. CR-09-0627 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br>**(Docket No. 14)** |

Defendant is charged with violation of 21 U.S.C. § 844(a), possession of a controlled substance, a Class A misdemeanor. Defendant brought a motion to suppress controlled substances allegedly found in the car by United States Park Rangers based on: (1) the lack of reasonable suspicion to stop her vehicle and to conduct a search, and (2) violation of her *Miranda* rights. The Court held an evidentiary hearing on March 30, 2010 and has reviewed pre-hearing as well as post-hearing briefing by the parties. For the reasons stated below the Court finds that Defendant's *Miranda* rights were violated and that the evidence collected following that violation must be suppressed.

## I. FACTS

The Court, after hearing testimony and reviewing the evidence presented at the evidentiary hearing, finds the following facts.

At approximately 3:49 p.m. on May 5, 2009, Rangers Kelly Maples and Shannon Jay were on patrol in the area of Bunker Road and Capehart Housing. The rangers observed a 1984 Mercedes Benz traveling eastbound on Bunker Road. They observed the left tail brake lamp was not working,

1  in violation of California Vehicle Code § 24603(b).  Ranger Maples stopped the vehicle at the
2  intersection of Bunker Road and Lamoraux and advised the driver of the violation.  As Defendant
3  reached over to get her license, insurance and registration from the glove compartment, Ranger
4  Maples, according to her testimony, noticed a very faint smell of marijuana.  Ranger Maples then
5  asked Defendant if she had a medical marijuana 215 card to which she stated that she did not know
6  what a "215 card" was and denied having any marijuana.  Ranger Maples took the registration,
7  insurance and California driver's license to verify the information.

8  While approaching her patrol car to run the verification, Ranger Maples told Ranger Jay she
9  smelled burnt tobacco.  She did not tell Ranger Jay that she smelled marijuana.  Ranger Jay then
10 approached the Defendant who remained in her car.  Ranger Jay smelled burn tobacco, but not
11 marijuana.  Ranger Jay admitted at the hearing he only had a "hunch" there might be marijuana in
12 the car and did not have reasonable suspicion or probable cause to search the car.  Nor did he see
13 anything that suggested Defendant was under the influence.  Based on his hunch, Ranger Jay then
14 advised Defendant that if she gave him the marijuana, he would issue her a citation in lieu of arrest.
15 Defendant then reached into an ashtray (which was not in Ranger Jay's view) and retrieved a burn
16 cigarette butt which Ranger Jay believed was a marijuana cigarette.

17 Ranger Maples moved Defendant and her passenger, Marlen Corben, to a nearby curb, while
18 informing dispatch that they now were on a narcotics contact and would need an additional unit sent
19 to the location.  As Ranger Jay directed Defendant and Mr. Corben to exit the vehicle and sit on a
20 nearby curb, Defendant told Ranger Jay that she had additional marijuana in the vehicle and
21 attempted to retrieve it when he directed her to sit on the curb.  Ranger Bob Del Secco arrived to the
22 location within five minutes to assist, while Ranger Maples and Jay searched the vehicle for
23 additional contraband.

24 Rangers Maples and Jay searched the vehicle for the additional contraband that Defendant
25 had referred to and found a partially burned marijuana cigarette in the ashtray.  Ranger Jay then
26 searched Defendant's purse which was located between the driver's seat and front passenger seat.
27 He opened up the black makeup bag inside the purse and found a baggie with marijuana.
28 Additionally, Ranger Jay found three small (2" x 2") ziplock baggies that contained a whitish

**United States District Court**
For the Northern District of California

crystalline substance consistent with the color and texture of methamphetamine. Ranger Jay then searched Defendant's wallet, which was also in the purse, and found a brown clod which had the odor and appearance of concentrated Cannabis. Ranger Jay seized all the items as evidence and used a NIK field test kit to perform a test of the crystalline substance and it showed positive for methamphetamine. The brown clod showed positive for marijuana.

     Rangers Jay and Maples then moved to the trunk of the vehicle. Ranger Maples located a black cash box inside the trunk which contained an orange and blue ceramic pipe consistent with the use of drugs. Ranger Jay located a cardboard box that contained a multi-colored glass pipe also consistent with drug use, and a silver mesh purse containing several (2" x 2") baggies with "Batman" insignia matching the baggie located in the makeup bag. There were also several (2" x 2") plastic baggies with red lips insignia and an electronic gram scale fond in the silver mesh purse.

     Rangers Maples and Jay seized and secured all the items and placed Defendant under arrest and performed a search of her person. No further contraband items were found on Defendant's person. Defendant was transported to Marin County Jail for booking, and she was cited and released.

## II.  CONCLUSION

A.  <u>Initial Stop</u>

     The U.S. Park Rangers conducted a valid vehicle stop of Defendants. Because they observed her left brake lamp was not operating properly that had reasonable suspicion she was in violation of California Vehicle Code § 24603(b) which requires vehicles to have two stop lamps. A traffic stop may be based on reasonable suspicion. *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Circ. 2006).

B.  <u>Vehicle Search</u>

     Once a traffic stop in initiated based on reasonable suspicion, the Government concedes that a warrantless search of the vehicle must be based on probable cause to believe the automobile holds contraband or evidence of a crime. Government's brief in opposition to motion to suppress, p. 5. Short of a search, law enforcement officers may engage in a reasonable inquiry that does not unreasonably extend the duration of a lawful traffic stop. *United States v. Mendez*, 476 F.3d 1077,

1081 (9th Cir. 2007). The reasonableness of such questioning depends on the totality of the circumstances. *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008).

In the instant case, the brief questioning by Rangers Maples and Jay was reasonable. Both smelled burnt tobacco, and Ranger Jay sensed a very faint smell of marijuana. Questions related to marijuana were brief and were related to observations made by the officers.

The critical question is whether the Park Rangers had probable cause to search the car after Ranger Jay, acting on a hunch, advised Defendant to turn over the marijuana in order to avoid arrest, to which Defendant responded by turning over what appeared to Ranger Jay to be a marijuana cigarette butt. If Defendant's response and production of the cigarette butt was validly obtained, then at that point the Park Rangers had probably cause to search the car. If the cigarette and Defendant's response were not lawfully obtained, then that basis for probable cause for the ensuing search of the car would be vitiated.

The Court thus turns to the lawfulness of Defendant's response and production of the cigarette elicited by Ranger Jay's threat of arrest. As discussed below, what transpired was in part a search and in part a communication implying an admission. The Court first examines the lawfulness of the search under the Fourth Amendment.

C.  Consensual Search

Had Ranger Jay examined areas of the car not within plain view, this would have been a search. Had Ranger Jay asked permission to enter the car, entered the car and examined such areas, there would have been a search by consent. Here, Ranger Jay obtained the same result by inducing Defendant, who, rather than opening the door and permitting the Ranger to enter the vehicle and search, instead handed over contraband from a place (ashtray) not within the officer's plain view. Analytically the result is the same -- a search was effectuated by Ranger Jay through Defendant's consent. *Cf. United States v. Winsor*, 846 F.2d 1569, 1573 (9th Cir. 1988) (search effected when door opened by party upon police command).

Since there was concededly no probable cause for the search, the critical question is whether consent to the search was validly obtained. In analyzing this question, the Court notes that in the absence of a warrant, the Government bears the burden of establishing the legality of the search.

4

1  *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991).  *Cf. Katz v. United States*, 389 U.S.
2  347, 357 (1967) (warrantless search is per se unreasonable under the 4th Amendment subject to a
3  few specific exceptions).  More particularly, in this case, the Government has the burden of proving
4  any consent was freely and voluntarily given.  *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

5       Defendant handed the putative contraband over to Ranger Jay only after he threatened arrest
6  (as opposed to a citation) if she did not.  Consent to a search is not voluntary when made under a
7  threat of arrest.  The Ninth Circuit has observed that even if an arrest had not yet been made,
8  "consent obtained under threat of subjecting [Defendant] to such an arrest cannot be said to be
9  voluntary."  *United States v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980).  *United States v. Soriano*,
10 361 F.3d 494, 602 (9th Cir. 2004) (factors in assessing voluntariness of consent include whether
11 defendant was in custody [see discussion below regarding arrest], whether Miranda warnings were
12 given, and whether defendant was notified that she had a right not to consent).

13      The Court concludes Ranger Jay's acquisition of Defendant's cigarette butt in response to his
14 threat of arrest violated the Fourth Amendment.  It was the result of a search made without probable
15 cause or valid consent.  Since the ensuing search of the entire vehicle which uncovered drugs was
16 predicated in part upon the probable cause supplied by the cigarette butt, that evidence of those
17 drugs was the "fruit[ ] of the poisonous tree" of the Fourth Amendment violation.  *Wong Sun v.*
18 *United States*, 371 U.S. 471, 488 (1963); *United States v. Washington*, 490 F.3d 765, 774 (9th Cir.
19 2007).[1]  As such, it is subject to suppression on this ground.

20 D.   <u>*Miranda*</u>

21      As noted above and as evident by both parties' briefing of the *Miranda* issue, Defendant's
22 act of handing the cigarette butt over to Ranger Jay in response to his directive that she give him the
23 marijuana to avoid arrest also constituted a testimonial act implicitly conceding she possessed
24 marijuana.  *See Doe v. United States*, 487 U.S. 201, 210 (1988) (conduct is testimonial if it is
25 "explicitly or implicitly, relat[ing[ a factual assertion or disclose information.").  This admission,
26 potentially admissible evidence at trial, also provided probable cause for the ensuing search of the

---

[1] The Government bears the burden of showing evidence is not the fruit of the poisonous tree. *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000).

vehicle. The Court therefore examines whether Ranger Jay should have issued a *Miranda* warning prior to threatening arrest if Defendant did not give him the marijuana. *See Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (Fifth Amendment applies to the testimonial or communicative acts).

The Government argues that *Miranda* warnings were not required because Ms. Darling was not subject to a custodial interrogation when she retrieved the marijuana cigarette from the ashtray. *See* United States Opp. at 6. Specifically, at oral argument, the Government contended that Ranger Jay's statement to Ms. Darling -- that he would issue a citation, in lieu of an arrest, if Ms. Darling produced the marijuana cigarette -- did not amount to "custody" under *Miranda* because Ranger Jay's statement did not suggest that an arrest was imminent. Notwithstanding the Government's position, the Court finds that Ranger Jay's statement constituted "custody" under *Miranda* as a "formal arrest," and at the very least, as a functional equivalent of a "formal arrest."

For *Miranda* purposes, an individual is considered to be in "custody" whenever there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)); *see also United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002) (to determine whether an individual was in "custody," the court must decide whether there was a formal arrest or functional equivalent of a formal arrest, based on the objective circumstances and whether a reasonable person would believe that he or she was free to leave); *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) ("A suspect is therefore 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.").[2]

In this case a *Miranda* warning was not required upon the ranger's initial stop and questioning. Until the point of Ranger Jay's threat of arrest, this was a routine traffic stop, without a

---

[2] With respect to routine traffic stops, the Supreme Court has previously held that *Miranda* protections do not ordinarily apply, because of the non-coercive and temporary nature of routine traffic stops. *See Berkemer v. McCarty*, 468 U.S. 420, 438-40 (1984). However, the Supreme Court has admonished lower courts to be "vigilant" so that police do not "'delay formally arresting detained motorists, and . . . subject them to sustained and intimidating interrogation at the scene of their initial detention.'" *Pennsylvania v. Bruder*, 488 U.S. 9, 10 n.1 (1988) (citing *Berkemer*, 468 U.S. at 440).

"sustained and intimidating interrogation." *Bruder*, *supra*. However, the situation changed when Ranger Jay threatened arrest. The Government conceded at the hearing herein that had Ranger Jay formally placed Defendant under arrest and then immediately thereafter told her that if she admitted possessing marijuana he would release her, he would have violated her *Miranda* rights. This is consistent with *California v. Beheler*, *United States v. Kim*, and *United v. Bengivenga* cited above. The fact that Ranger Jay did not first formally arrest Defendant but instead told her she would be arrested if she did not in essence admit to possessing marijuana makes no material difference. Given the imminence of the impending arrest which could be avoided only by admitting to possession of marijuana (by handing it over), Ranger Jay's extraction of the implicit admission was as coercive as an interrogation following an arrest. Defendant was not free to leave and was subject to a restraint on freedom equivalent to a formal arrest. *Kim*, *supra*; *Bengivenga*, *supra*. To hold otherwise would exalt form over substance and license a rhetorical circumvention of *Miranda*. Therefore, Ranger Jay's conduct violated Defendant's *Miranda* rights, and testimonial evidence of her response in handing over the cigarette butt must be suppressed.

However, this does not necessarily imply the fruits of a *Miranda* violation -- the ensuing search of the vehicle predicated on probable cause based not on the physical evidence of the cigarette butt, but on her testimonial conduct implicitly admitting possession of marijuana -- must be suppressed as well. The parties have not briefed the question whether the "fruits of the poisonous tree" doctrine applies to a *Miranda* violation. *See United States v. Patane*, 542 U.S. 630 (2004) (violation of *Miranda* does not necessarily require suppression of physical evidence).

The parties are hereby ordered to submit further briefing on this issue. Cross briefs shall be filed two weeks (14 days) from the date of this order. Absent further order setting the matter for further hearing, the matter shall then be taken under submission.

IT IS SO ORDERED.

Dated: July 14, 2010

EDWARD M. CHEN
United States Magistrate Judge