1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES,                              No. CR-09-0627 EMC

9            Plaintiff,

10       v.                                     **ORDER DENYING DEFENDANT'S
                                                MOTION TO SUPPRESS EVIDENCE**

11  KELLY ANN DARLING,

12           Defendant.

13  _____/

14

15       Defendant Kelly Ann Darling is charged with a violation of 21 U.S.C. § 844(a), possession

16  of a controlled substance.  On August 4, 2010, the Court issued an Order re Additional Briefing

17  requesting further briefing on whether the standard for determining involuntariness of a confession

18  under the Fifth Amendment for purposes of excluding evidence under *United States v. Patane*, 542

19  U.S. 639 (2004) is different from determining whether there was a valid consent to a search under

20  the Fourth Amendment, and whether the Court's prior finding that Ms. Darling did not validly

21  consent to the search means that her confession was involuntary under the Fifth Amendment.

22  Docket No. 28.  The Court requested additional briefing on the issue of whether the remaining

23  contraband should also be suppressed as the fruit of an involuntary confession.  Docket No. 28.

24       Having considered the parties' briefs and accompanying submissions, the oral argument of

25  counsel, and all other evidence of record, the Court hereby **DENIES** Ms. Darling's motion to

26  suppress the remaining drugs in the vehicle.

27

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### I.   FACTUAL & PROCEDURAL BACKGROUND

Ms. Darling is charged with a violation of 21 U.S.C. § 844(a), possession of a controlled substance, a Class A misdemeanor.  The charges arose from a valid traffic stop[1] of Ms. Darling's vehicle on May 5, 2010, by two United States Park Rangers, Ranger Maples and Ranger Jay.  Docket No. 14 at 1:26-2:2.  During the stop, Ranger Jay told Ms. Darling that if she gave him the marijuana she had, he would issue a citation in lieu of arrest.  *Id.* at 2:13-14.  The ranger admitted at the hearing that he only had a "hunch" that Ms. Darling had marijuana, and that he did not have reasonable suspicion or probable cause to search the vehicle.  *Id.* at 2:12-13.  In response to Ranger Jay's threat of arrest, Ms. Darling handed over a cigarette butt which appeared to be the remnants of a marijuana cigarette.  *Id.* at 2:15-16.  The rangers instructed Ms. Darling to exit the vehicle and sit down on the curb.  *Id.* at 2:17.  Ms. Darling then told them that she had more marijuana in the car, and Ranger Jay conducted a search of the vehicle.  *Id.* at 2:20, 24.  At no point during the interaction did the rangers issue Ms. Darling the *Miranda* warnings.  *See id.* at 6:1-2.  The Rangers found further marijuana, hashish, and crystal methamphetamine in the vehicle.  *Id.* at 2:25-3:5.  The pending charges include possession of all of the drugs discovered in her vehicle during the May 5 encounter.

Ms. Darling brought a motion to suppress the controlled substances allegedly found in the car by Ranger Jay and Ranger Maples based on (1) lack of reasonable suspicion to stop her vehicle and to conduct a search, and (2) violation of her *Miranda* rights.  On July 14, 2010, the Court granted Defendant's motion to suppress the marijuana cigarette butt because Ranger Jay's conduct violated Ms. Darling's Fourth Amendment and *Miranda* rights.  Docket No. 14 at 7:13-14.  This Court found consent to the search was vitiated by Ranger Jay's threat of arrest, citing *United States v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980).  However, because this Court found the subsequent search could also have been justified by the implied confession inherent in Ms. Darling handing over the cigarette butt in response to Ranger Jay's directive to give him the marijuana, the Court

---

[1] The Court held the initial traffic stop was supported by reasonable suspicion and therefore valid.  *See* Docket No. 14 at 3:18-22.

2

United States District Court

For the Northern District of California

1  requested additional briefing on the issue of whether the remaining contraband uncovered during the

2  ensuing search should also be suppressed as the fruit of an involuntary confession.  Docket No. 28.

3  ## II.   DISCUSSION

4      As previously noted, Ms. Darling implicitly admitted to possessing marijuana through a

5  nonverbal confession when she handed over the marijuana cigarette butt to Ranger Jay.  Ms.

6  Darling's "confession" led to the rangers' discovery of more drugs in her vehicle.  Whether this

7  "confession" was voluntary is critical in determining the admissibility of the fruits of that

8  confession.  If Ms. Darling's confession was voluntary, the fruits of the confession, even if they

9  were obtained in violation of *Miranda*, are admissible; if the confession was involuntary, the fruits

10  must be suppressed.  *See United States v. Patane*, 542 U.S. 639, 640 (2004); *Chavez v. Martinez*,

11  538 U.S. 760, 769 (2003).  It is the prosecution's burden to prove by a preponderance of the

12  evidence that a confession was voluntary.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

13      The requirement that confessions be voluntary is derived both from the Self-Incrimination

14  Clause of the Fifth Amendment which provides that "[n]o person . . . shall be compelled in any

15  criminal case to be a witness against himself" as well as the Due Process Clause of the Fifth and

16  Fourteenth Amendments.  *See Oregon v. Elstad*, 470 U.S. 298, 304 (1985); *Schneckloth v.*

17  *Bustamonte*, 412 U.S. 218, 223-24 (1973).  Coerced confessions are prohibited because of the

18  potential unreliability of the statement and society's abhorrence of coercion against the individual's

19  freedom of will and use of involuntary confessions.  *Linkletter v. Walker*, 381 U.S. 618, 637 (1965).

20  *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) ("[A]ny criminal trial use against a defendant

21  of his involuntary statement is a denial of due process of law[.]") (emphasis omitted); *Lego*, 404

22  U.S. at 485 ("The use of coerced confessions, whether true or false, is forbidden because the method

23  used to extract them offends constitutional principles").

24      Whereas the rule against involuntary searches is designed to protect the integrity of the fact-

25  finding process, *Schneckloth*, 412 U.S. at 242, the Fourth Amendment's exclusionary rule is

26  intended to protect privacy interests and deter unconstitutional police conduct.  Evidence discovered

27  as a result of an unconstitutional search is not unreliable -- its exclusion is meant to disincentivize

28  unreasonable searches.  *See, e.g.*, *Elstad*, 470 U.S. at 306; *see also Schneckloth*, 412 U.S. at 242

**United States District Court**
For the Northern District of California

1   ("The protections of the Fourth Amendment . . . have nothing whatever to do with promoting the fair

2   ascertainment of truth at a criminal trial."). In both instances, however, voluntariness is pivotal to

3   admissibility of evidence at trial.

4          The tests for voluntariness of a consent to search and voluntariness of a confession share a

5   common root; the former is derived from the latter. *See id.*, 412 U.S. at 223-27. In both instances,

6   voluntariness is measured under the traditional definition of voluntariness, *id.* at 229, which

7   examines the totality of all the circumstances, *id.* at 227. *See also United States v. Leon Guerrero*,

8   847 F.2d 1363, 1365-66 (9th Cir. 1988) (test for voluntariness of a confession is a totality-of-the-

9   circumstances balancing test). As the Court in *Schneckloth* explained:

10              Just as was true with confessions, the requirement of a 'voluntary'
                consent reflects a fair accommodation of the constitutional
11              requirements involved. In examining all the surrounding
                circumstances to determine if in fact the consent to search was
12              coerced, account must be taken of subtly coercive police questions, as
                well as the possibly vulnerable subjective state of the person who
13              consents. Those searches that are the product of police coercion can
                thus be filtered out without undermining the continuing validity of
14              consent searches. In sum, there is no reason for us to depart in the
                area of consent searches, from the traditional definition of
15              'voluntariness.'

16   *Schneckloth,* 412 U.S. at 229.

17          Although the test of voluntariness in consent to a search and a confession both employ the

18   same traditional definition of voluntariness, perhaps because of the different interests which underlie

19   the constitutional rights at issue and the contextual differences, the application of the test varies.

20   Courts examining whether a confession is voluntary have examined different factors surrounding a

21   confession than the factors examined in the context of a search.

22          In determining the voluntariness of consent to search, courts have looked to a number of

23   factors, including "(1) whether the defendant was in custody; (2) whether the arresting officers had

24   their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified

25   that [he] had a right not to consent; and (5) whether the defendant had been told a search warrant

26   could be obtained." *United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007) (citing *United*

27   *States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2004)) (alterations original). Courts held that consent

28   was involuntary when INS agents made misleading statements implying they did not need a warrant

4

United States District Court

For the Northern District of California

1    to enter an apartment, *see Orhorhaghe v. INS*, 38 F.3d 488, 500-01 (9th Cir. 1994), and as here

2    where police threaten an arrest if consent to search is refused, *Ocheltree*, 622 F.2d at 994.

3         In contrast, in determining the voluntariness of a confession, the totality of the circumstances

4    focuses both on the nature of the accused and the techniques used by the police officers to secure a

5    confession. *Miller v. Fenton*, 474 U.S. 104, 116 (1985).  Regarding the former, the lack of *Miranda*

6    warnings is one factor, although it is not dispositive.  *See, e.g.*, *Withrow v. Williams*, 507 U.S. 680,

7    693 (1993).  Other factors include the youth of the accused, the low intelligence of the accused, the

8    lack of advice as to the accused's constitutional rights, the length of the detention, the repeated and

9    prolonged nature of the questioning, and the use of physical punishment, *Schneckloth*, 412 U.S. at

10   226 (internal citations omitted), as well as personal history of the accused, the level of his or her

11   educational attainment, and his or her physical condition, *see Crane v. Kentucky*, 476 U.S. 683, 691

12   (1986).  The mental state of the accused is a particularly salient factor in determining whether a

13   statement was made voluntarily.  *See Blackburn v. Alabama*, 361 U.S. 199, 200-01, 207-08 (1960)

14   (confession of a young, paranoid schizophrenic with a low level of educational attainment was

15   involuntary); *but see Colorado v. Connelly*, 479 U.S. 157, 160-64 (1986) (defendant's confession in

16   order to obey the "voice of God" was not involuntary).  Courts have also inquired into whether the

17   defendant was intoxicated.  *E.g.*, *Beecher v. Alabama*, 408 U.S. 234, 236-37 (1972) (confession was

18   involuntary when made just after the defendant underwent two injections of morphine to treat his

19   gunshot wound); *see also United States v. Guaydacan*, 470 F.2d 1173, 1173-74 (9th Cir. 1992) (per

20   curiam) (listing as a factor whether the defendant was under the influence of drugs); *but see United*

21   *States v. Lewis*, 833 F.2d 1380, 1387-88 (9th Cir. 1987) (statement was voluntary although the

22   defendant suffered from heroin addiction and anesthesia at the time she made her confession).

23        As to the techniques used by law enforcement, the courts have looked at physical and

24   psychological coercion such as beating and threatening the arrestee's life, *e.g.*, *United States v.*

25   *Jenkins*, 938 F.2d 934, 939-40 (9th Cir. 1991), denying food and clothing, *United States v. Eccles*,

26   850 F.2d 1357, 1360 (9th Cir. 1988), threatening to arrest a defendant's family, *e.g.*, *Rogers v.*

27   *Richmond*, 365 U.S. 534, 538, 541 (1961); *United States v. Moreno*, 891 F.2d 247, 249 (9th Cir.

28   1989), and threatening to separate a defendant from her family, *see United States v. Tingle*, 658 F.2d

**United States District Court**
For the Northern District of California

1  1332, 1336 (9th Cir. 1981) (statement was involuntary when made in response to threat that the

2  defendant would not see her young child "for a while" because the maximum penalties for the

3  offense were high).  The length and condition of interrogation are also relevant.  *See Reck v. Pate*,

4  367 U.S. 433, 441-42 (1961) (defendant interrogated continuously over five days, deprived of food

5  and medical treatment); *Davis v. North Carolina*, 384 U.S. 737, 743-47 (1966) (sixteen days of

6  detention with limited diet and denial of access to telephone and visitors).

7  And while a police officer's general statement that there would be advantages to cooperating

8  and that a defendant's cooperation would be made known to the prosecutor or court has been held

9  proper, *see United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1347-48 (5th Cir. 1994); *United*

10  *States v. Hart*, 619 F.2d 325, 326 (4th Cir. 1980) (per curiam); *United States v. Ferrara*, 377 F.2d

11  16, 17-18 (2nd Cir. 1967), the Ninth Circuit has held that "there are no circumstances in which law

12  enforcement may suggest that a suspect's exercise of the right to remain silent may result in harsher

13  treatment by a court or prosecutor."  *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994).  In

14  *Harrison*, the Court found the defendant's confession to be involuntary where, upon her arrest, the

15  police officer informed her that she was facing up to twenty years of imprisonment and asked her

16  whether she thought it would be better if her sentencing judge were told that she had cooperated

17  with police or that she had not cooperated, at which point she confessed.  *Id.* at 890.

18  Importantly, unlike the Ninth Circuit's holding in *United States v. Ocheltree*, *supra*, Ms.

19  Darling has cited no case which has held that the threat of an arrest itself renders a confession

20  involuntary under the Fifth Amendment and Due Process Clause.  Accordingly, this Court's prior

21  holding that Ms. Darling's consent to search was not voluntary does not necessary mean that Ms.

22  Darling's confession was involuntary.  A separate analysis of the voluntariness of Ms. Darling's

23  confession under the applicable case law considering the totality of the circumstances is required.

24  While the threat of arrest and failure to give a *Miranda* warning weigh in favor of

25  involuntariness in the instant case, the conduct of the police leading up to Ms. Darling's confession

26  does not rise to the level of coerciveness that was present in other cases in which involuntariness

27  was found.  Ms. Darling's detention in her car prior to her confession (and not, *e.g.*, in a police

28  station house) lasted minutes, not hours or days.  Nor was she subject to any physical coercion or

United States District Court

For the Northern District of California

1   deprivation.  In fact, Ms. Darling was not actually in custody and had not actually charged with a

2   crime, and thus the interrogation was less coercive than in *Tingle* and *Harrison*, where the police

3   emphasized the maximum sentence the defendants were facing.  And unlike the defendants in those

4   cases, Ms. Darling did not face the near certainty of a lengthy prison sentence.  In contrast to the

5   defendant in *Harrison*, Ms. Darling was not facing up to twenty years in prison; the arrest would

6   have only been for a traffic infraction or perhaps minor drug possession.  And unlike in *Moreno* and

7   *Rogers*, where the police officers threatened to arrest the defendants' family members, the rangers

8   here did not make any threats amounting to extreme psychological coercion.

9           In addition, there is no evidence that Ms. Darling had a particularly vulnerable mental state.

10   There is no evidence that she suffered from a mental disorder, that she was especially young, or that

11   she had a low level of education or intelligence.  There is no evidence that she was intoxicated—the

12   rangers themselves admitted that they did not smell marijuana.  Similar to the defendant in *Lewis*,

13   who was a heroin addict but showed no sign of being actually intoxicated at the time of her

14   confession, here, there is no evidence that Ms. Darling was under the influence of alcohol or drugs,

15   despite the fact that she found in possession of marijuana and other drugs.

16           Therefore, the Court concludes that under the totality of all the circumstances, the confession

17   was not involuntary.  Thus under *United States v. Patane*, the incriminating evidence uncovered

18   after Ms. Darling handed the cigarette butt to Ranger Jay need not be suppressed because it was not

19   the fruit of an involuntary confession.  Accordingly, Ms. Darling's motion to suppress the remaining

20   drugs in the vehicle is **DENIED.**

21

22           IT IS SO ORDERED.

23

24   Dated:  October 28, 2010

25                                                    _____

26                                                    EDWARD M. CHEN
                                                     United States Magistrate Judge

27

28